ORDER DIRECTING INDIAN CHILD WELFARE PROGRAM TO FILE A PETITION TO TERMINATE PARENTAL RIGHTS
KATHARINE ENGLISH, Judge.

Preliminary Issues:

Attorney for the Mother. Dan Cross, Attorney for the mother called to inform the Court that he has had no contact with the mother since he was appointed to the case. He has asked to be relieved of the appointment. The Court will allow his withdrawal from the case. At any time in the future the mother may request appointment of counsel, and the Court will appoint a lawyer to represent her.

Current Posture of the Case:

B.A., age 4, was originally adjudicated in December, 1996, when she was 11 months old. She was briefly returned to her mother’s physical custody for 3 months, but was removed again in November, 1997, (at 1 yr 10 months). She was placed in the Tribal home of her foster parents. She has remained there nearly three years. She has not seen her mother since December, 1997 (1 yr., 8 months). She is thriving in the foster home. The foster parents wish to adopt her.
C.A., age 3, was taken into Tribal custody in November, 1997, when he was 2 months old. He was placed in the Tribal home of his foster parents, where he has remained all of his life (3 years). He has only had one physical visit with his mother, and has had no written communication from her for over a year and a half. He is thi'iving in the foster home. The foster parents want to adopt him.
Public Law 96-272 was amended in 1998 by the Adoption and Safe Families Act (hereafter ASF A). This federal law provides Tribes with matching funds for children in foster care. While the Tribe, as a sovereign nation, is free to ignore the federal law, to do so prevents the Tribe from receiving considerable money from the federal government. To receive those funds, the Tribal Indian Child Welfare Program (hereafter ICW Program) must follow the requirements of the Act. Over the past two and a half years the Tribe has been in full compliance with the federal law and received maximum funds from the federal government.
*112 ASFA requires that when children have been in foster care for 15 of the prior 22 months, as is the case here, the Judge must direct a filing of a Petition to Terminate Parental Rights and free the children for adoption unless the ICW Program can show, as evidenced by the case plan, that compelling reasons exist not to do so.
Therefore this matter came before the Court for that purpose.

Arguments:

At the hearing today, the ICW Program presented evidence to persuade the Court to enter findings that compelling reasons exist not to file a termination Petition. The arguments are threefold:
# 1. Current Tribal law clearly states that adoption is a step of last resort, and that other permanent plans for children, such as legal guardianship, are preferred.
# 2. The Ordinance may be changed soon. Tribal Council is “on the verge” of determining Tribal policy regarding termination of parental rights. Once a policy is pronounced, the Tribal Attorney’s office drafts a new proposed Ordinance to reflect the policy. That proposed Ordinance goes before the Tribal Council for approval.
At the recent Tribal Council meeting, the Tribal Council decided not to resolve the matter and set it over. In the interim, this coming weekend, elections will be held for Tribal Council member positions. Three Council members are up for reelection. There is no guarantee that the current members will be re-elected, that any new member will not need to consider the issue as if from the start, or that the process of determining a policy will not be further delayed.
The ICW Program argues that to proceed now, under the existing Ordinance, when a new policy and Ordinance may be forthcoming, will result in confusion, conflict of laws, and is not in the best interests of the children;
# 3. The current Ordinance provides, in part, that “The Court may terminate a parent’s rights when the Court finds beyond a reasonable doubt that ... continued contact between the child and parent on any basis is not in the child’s best interests.” The ICW Program does not believe it has the evidence to meet this burden.
The ICW Program, by and through the Tribal attorney, presented one witness, the caseworker, Ms. Petite.

Analysis and Findings:

Argument # 1. The Court has taken judicial notice of the fact that Tribal law does not prefer adoption. While specifying that termination and subsequent adoption are not favored, and should be the plan of last resort, the Ordinance does not prohibit termination of parental rights. In fact, the Ordinance provides for it.
Stated Tribal preferences are probative, and generally support an argument against the termination of parental rights. Nothing prevents the Court from considering these preferences in the actual determination of whether or not to terminate rights, following a hearing on the Petition. However', this evidence is not sufficient, in and of itself, to stand as a compelling reason not to file a termination Petition where other factors support such a filing.
Argument # 2. The Court has taken judicial notice of the fact that the Tribal Council has, at least since January, 2000, been moving toward adoption of a policy regarding termination of parental rights. A proposed policy has gone out for Tribal member comment, a community meeting has been held to take public comment, and the matter is scheduled before a Tribal Council Subcommittee for the purpose of *113 making recommendations to the full Tribal Council.
The Court has also taken judicial notice of the legal file, which reflects that on September 16, 1999, nearly one year ago, the Court, by written findings and Order, alerted the ICW Program and the Tribal Attorney’s office, that “... The children have been in foster care for at least 15 of the last 22 months. The Court must explore whether or not there are compelling reasons not to direct the ICW Program and the Tribal attorney’s Office to file a Petition to Terminate Parental Rights, and free these children for adoption by their caretakers.” A hearing was set for November, 1999 for that purpose. Since that time there have been three setovers of a hearing on that issue, based on the need to wait until the Tribal Council developed Tribal policy on termination of parental rights proceedings.
The Court has, in the past, found that the Tribal Council’s efforts to develop a sound Tribal policy regarding termination of parental rights supports a delay in the determination required by the federal law. However, where an Ordinance already exists that permits termination of parental rights, as is true here, the argument that the law may change can be stretched only so far, and not so far as to delay a filing where other factors support it. This is particularly true where the new proposed policy, (as in this case) will not prohibit the termination of parental lights; rather, it modifies the bases on which such a Petition may be filed.
Time is of the essence in these cases. Congress determined that children need permanency, and that the best interests of children demand a healthy, safe placement, upon which children can rely as a permanent home. The federal law was clearly passed to end the pattern of children remaining too long in foster care, and to expedite the best permanent plan for children. Adoption is, with some exceptions, the preferred plan, in that it cannot be subsequently disrupted by a parent seeking return of the children. When children have been in care for 15 of the past 22 months, the law requires that the Court direct the filing of a Petition to Terminate Parental Rights and free the children for adoption, unless the social service agency has a case history that reflects compelling reasons not to do so.
In this case, the Court has given sufficient deference to the ICW Program’s argument that the new Tribal policy and new Tribal Ordinance will soon be in place. The probability of a new policy, and a subsequent new Ordinance, is no longer a compelling reason in this case. The children deserve the matter of their permanency in adoptive placement to be determined in an adjudicatory hearing on termination as provided by the current Ordinance.
Argument # 3. The Court has reviewed all of the prior Status Review Reports in this case, and has listened to the testimony of the current ICW Program caseworker. It is not clear to the Court that the ICW Program could not prove that contact between the child and the mother on any basis is not in the children’s best interests. The case file reflects ample evidence, and the caseworker testified today, that there is no bond between the children and their biological mother, that her sporadic entry into and exit from their lives has been problematic, that there has been no contact of any kind between the children and their mother for at least a year and a half, and that the last visit between mother and C.A. was upsetting to the child.
The evidence may differ at trial on a Petition to Terminate. However on this paucity of proof, the Court cannot find compelling reasons not to direct the filing *114 of that Petition. Let the matter be finally determined at trial.

Summary of Find ings:

In sum, the Court finds that there are not compelling reasons to prevent this Court from directing the Indian Child Welfare Program to file a Petition to Terminate Parental Rights in this case. It is in the best interests of the children for a Petition to Terminate Parental Rights to be filed, and for the matter to be adjudicated.
ORDER:
1. The children are continued as wards of the Tribal Court.
2. The children continue to be committed to the temporary care, custody, and control of the ICW Program.
3. The children continue in their current placements, under their current permanent plans of permanent foster care.
4. The ICW Program shall file a Petition to Terminate Parental Rights in this case.
5. The Court shall review this case on November 2, 2000, at 11:30 AM, at the same time the Court conducts a Show Cause Heai'ing on the separate Petition for Termination of Parental Rights filed today by the children’s attorneys.
6. Dan Cross is relieved as attorney for the mother.